On Rehearing
A rehearing was granted in this case upon the state's urgent request that it be *Page 985 
"given an opportunity to demonstrate to the Court its error in granting a new trial." However, in presenting the state's cause, counsel have failed to avail themselves of the opportunity thus afforded them. In oral argument nothing was pointed to that had not been presented originally, and the state relied exclusively on its original written brief. By referring to the application itself, however, we gather the primary question presented for our consideration on this rehearing is whether the evidence fails to support the court's conclusion that the statement attributed to State Officer Bradley by Jailer Estopinal, one of the state's witnesses — "Boy, I have got you in the palm of my hand. You had better confess to me" — constituted a "veiled threat or a coercive bidding calculated, under the circumstances, to induce a confession irrespective of its truth or falsity."
The rule now universally obtaining in all countries where the common law prevails, that a confession of a person accused of a crime is admissible in evidence only if freely and voluntarily made, is the result of the humanitarian principles evolved by courts during civilization's progress from the ancient harsh and continental practice of putting a person charged with a crime to the torture and breaking him piece by piece until the confession was obtained, regardless whether a crime had, in fact, been committed, or, if committed, had been committed by the person being tortured. *Page 986 
It was only natural, therefore, that this humane principle found its way into our system of law when our forefathers came to this country in their quest for full liberty and that there was included in the Bill of Rights to the Constitution of the United States the provision that no one could be compelled in a criminal case to be a witness against himself.
The delegates representing the people of this state at the Constitutional Convention of 1921 included in the Bill of Rights to this Constitution a similar provision, and, in order to insure it would be beyond the power of the legislature or the judiciary to depart from what was the then accepted jurisprudence of this court, they added as a part of this same section, Section 11 of Article I, the provision that "No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel confession of crime; nor shall any confession be used against any person accused of crime unless freely and voluntarily made."
In conformity therewith, the legislature of 1928, in adopting a Code of Criminal Procedure, incorporated in its Articles 452 and 451 respectively the following provisions: "No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel a confession of crime," and "Before what purposes [purports] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, *Page 987 
and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." (Brackets ours.)
It therefore follows that the admissibility of a confession in evidence is predicated upon the state's establishing its free and voluntary character by proof that is direct and positive, and, under our jurisprudence, this fact must not only be established to the satisfaction of the trial judge out of the hearing of the jury but his ruling with respect thereto will not be disturbed on appeal unless clearly not supported by the evidence. Once in evidence, of course, it is for the jury to say what weight shall be accorded a confession.
Following this procedure, the state, before offering the confession of the accused in evidence, offered the testimony of Jailer Estopinal, to whom the confession had been made, who affirmatively and positively stated the accused had confessed to him freely and voluntarily without any inducements or duress. The accused, taking the stand in his own behalf, testified he had been beaten, threatened, and otherwise mistreated by Deputy Sheriff Langlois (who died before the trial of the case) and State Police Sergeant Bradley (who was present in the courtroom but not called to testify on this point) in the presence of Jailer Estopinal, to whom he subsequently made the confession, but not until he had been led to believe that if he confessed it would be easier on him, with the suggestion that he would get the same sentence the *Page 988 
prisoner in the adjoining cell had gotten — 10 days.
During this hearing the jailer, while on cross-examination, said State Officer Bradley made the statement with reference to having the accused in the palm of his hand but he denied the accused had been mistreated in the manner he subsequently testified he had. However, from a thorough study and analysis of the defendant's own testimony, we are compelled to admit our conclusion that the statement attributed to Bradley was a veiled threat or coercive bidding calculated to induce a confession is not clearly borne out by the record.
It appears from the testimony of the accused that his motive for making the confession was not the previous treatment allegedly accorded him, but, rather, the jailer's statement to him later the same afternoon that it would go a lot easier with him if he did confess.
In giving his version of the incident the accused makes no reference to the remarks about the "palm of the hand" attributed to Bradley, but, instead, says the police officer told him he was coming back "and when I come back, you can give your soul to God, and you know what to me." In his next answer the accused clarifies this statement by saying "He told me that if the dirt [from the scene of the crime] turned out to be like the dirt in the paper that he had [just raked from the pants of the accused by the state officer], that I could give my soul to `God and you know what to me.'" And *Page 989 
again, when he was questioned about his footprints, he stated: "If the dirt would turn out like the dirt in that paper, I could give my soul to God." (Brackets ours.) This conversation took place about 1:30 in the afternoon. The accused testified further that later that same afternoon, at approximately 4:45 p.m., the jailer told him it would be easier if he would tell the truth because if the result of the test was unfavorable "he would catch hell," and that the jailer, pointing to the man in the next cell, told the accused he had confessed to the truth, whereupon the accused asked how many days the man had gotten and when the jailer replied "Ten days," he then confessed. But he says, "At that time, I didn't know it was rape, so I lied on myself."
We are, nevertheless, of the opinion that the record as made up fails to establish the state discharged its burden of establishing affirmatively the confession was freely and voluntarily made. We think that after the accused testified in detail about the mistreatment he received and the inducements offered him at the time he confessed, the jailer should have been recalled and re-examined with respect to the particulars testified to by the accused in order that the trial judge might have been afforded a better opportunity to weigh and decide this very important issue.
For the reasons assigned, our original decree annulling and setting aside the conviction and sentence and remanding the case *Page 990 
for a new trial, is reinstated and made the final order of this court.
O'NIELL, C. J., takes no part.
McCALEB, J., concurs in the decree adhering to the views expressed in the original opinion.